# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

EDDIE J. SMITH,

       **Plaintiff,**

    v.               Case No. 17-CV-1332

NANCY A. BERRYHILL,

       **Defendant.**

## DECISION AND ORDER

**1. Background**

  Eddie J. Smith was injured when he fell from a forklift in 2002, injured again in 2008 when carrying a washing machine, and again in 2012 when digging a trench. (Tr. 39-40.) He alleges he is disabled as of November 23, 2012, due, in part, to lumbar spondylosis and degenerative disc disease. Following a final decision of the Commissioner denying his applications for Social Security Disability Insurance and Supplemental Security Income benefits, Smith filed the present action. He was insured through July 31, 2013. (Tr. 18.)

  An administrative law judge (ALJ) concluded that Smith did not meet or medically equal a listed impairment and retained the residual functional capacity to

perform light work with the additional limitations of only occasional climbing of ramps or stairs; no climbing of ladders, ropes, or scaffolds; occasional stooping, crouching, kneeling, and crawling; and avoiding concentrated exposure to unprotected heights, hazards, and the use of moving machinery. (Tr. 21.) "He is also limited to simply, routine and repetitive tasks, with no fast-paced work, only simple, work related decisions, occasional work place changes and occasional interaction with supervisors." (Tr. 21.) Although this precluded his past relevant work, there existed a significant number of jobs he could perform. (Tr. 27-28.) Therefore, Smith was not disabled. (Tr. 30.)

## 2. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It does not look at the evidence anew and make an independent determination as to whether the claimant is disabled. Rather, the court must affirm the ALJ's decision if it is supported by substantial evidence. *Moore*, 743 F.3d at 1120. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1120-21 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Thus, it is possible that opposing conclusions both can be supported by substantial evidence. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

It is not the court's role to reweigh evidence or substitute its judgment for that of the ALJ. *Moore*, 743 F.3d at 1121. Rather, the court must determine whether the ALJ complied with his obligation to build an "accurate and logical bridge" between the

evidence and his conclusion that is sufficient to enable a court to review the administrative findings. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). "This deference is lessened, however, where the ALJ's findings rest on an error of fact or logic." *Thomas*, 745 F.3d at 806. If the ALJ committed a material error of law the court cannot affirm the ALJ's decision regardless of whether it is supported by substantial evidence. *Beardsley*, 758 F.3d at 837; *Farrell v. Astrue*, 692 F.3d 767, 770 (7th Cir. 2012).

**3. Analysis**

**3.1. ALJ's Assessment of Medical Evidence and Dr. Mines's Opinions**

Smith argues that the ALJ improperly "played doctor" by assessing medical evidence that was beyond his expertise. Specifically, Smith notes that, although the ALJ relied on state agency consultants who reviewed the medical records, the consultants' opinions predated a November 2014 MRI. According to Smith, the ALJ interpreted this MRI on his own to conclude that it was inconsistent with the opinion of Dr. Arthur Mines, Smith's treating physician. (ECF No. 27 at 9-12.) Smith separately argues that the ALJ lacked substantial evidence to reject Dr. Mines's opinions. (ECF No. 27 at 18-23.) The court finds these alleged errors related and thus addresses them together.

"An ALJ must give 'controlling weight' to a treating source's opinion if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.'" *Punzio v. Astrue*, 630 F.3d 704, 710

3

(7th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)). "And whenever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision." *Id.* (citing 20 C.F.R. § 404.1527(d)(2)). However, the ALJ's discussion need not be comprehensive; the ALJ need only "minimally articulate" her reasoning. *Filus v. Astrue*, 694 F.3d 863, 869 (7th Cir. 2012).

Dr. Mines offered multiple opinions over the years that he treated Smith. The ALJ characterized these opinions as "highly exaggerated" and "inconsistent with each other and with the imaging studies and with the claimant's longitudinal record of conservative treatment." (Tr. 25.) The ALJ further stated, "Given the November 2014 MRI scan and the claimant's discharge from the pain management clinic in 2016, it is difficult to accept Dr. Mines' opinions." (Tr. 25.)

However, the ALJ did not describe how the November 2014 MRI was inconsistent with Dr. Mines's conclusions. Rather than somehow suggesting that Smith was not disabled, the objective findings in the MRI report identified a likely source of Smith's pain: "Facet arthropathy with moderately severe right-sided facet arthropathy at L5-S1. This finding most likely significantly contributes to the patient's signs and symptoms." (Tr. 787.) If the ALJ believed these objective findings were inconsistent with the alleged severity of Smith's symptoms, the court agrees with Smith that such a conclusion was beyond the expertise of an ALJ. And the ALJ could not properly rely on

4

the conclusions of the state agency consultants on the import of this MRI because it was taken after the consultants' review of the record.

But the MRI was not the ALJ's only reason for concluding that Dr. Mines's opinions were "not fully support[ed]" (Tr. 26) and entitled to "little weight" (Tr. 25). The ALJ noted that Dr. Mines opined in May of 2013 that Smith could return to work without restrictions. (Tr. 25.) But only seven months later, in December of 2013, Dr. Mines concluded that Smith was incapable of any fulltime work. (Tr. 25.) The ALJ characterized these opinions as "internally inconsistent" because "[t]here does not appear any significant event noted either in the medical record or testimony at the hearing that could have triggered such a drastic change in the claimant's medical condition between May and December of 2013." (Tr. 25.)

On May 17, 2013, Mines completed a form titled "Certificate to Return to Work/School" and checked the box next to "No Work/School Restrictions." (Tr. 453.) The ALJ relied on this to conclude that Mines found Smith was able to work without restrictions. But other portions of the form are inconsistent with that reading. For example, the top of the form asks the doctor to identify when the patient will be able to return to work. (Tr. 453.) There is a box for "Immediately (Tomorrow)" and one for "or as follows" followed by a blank space. Mines checked the latter box, and in the space wrote "pending." (Tr. 453.) In a space for comments, Dr. Mines wrote "totally disabled." (Tr. 453.) In the portion of the form where the physician is to identify when this

5

assessment is "Effective Until," Dr. Hines wrote, "to be reassessed in 6 months." (Tr. 453.)

Read in its entirety, and particularly in light of Dr. Mines's other opinions, the court finds that the ALJ erred when he read the May 2013 form as inconsistent with Dr. Mines's subsequent opinions that Smith was incapable of any fulltime work. Consistent with his subsequent opinions, Dr. Mines concluded that Smith was "totally disabled" in May of 2013. That conclusion is obviously inconsistent with the notion that Smith is able to work without restrictions. Moreover, if Dr. Mines had *really* believed Smith was capable of returning to work, it makes little sense that he would have said the date he could return was "pending" rather than that he could return to work immediately. The court can only speculate as to why Dr. Mines checked the "No Work/School Restrictions" box; perhaps Dr. Mines was inattentive when reading the form, reading only the "No Work" to the left of the slash and thus intending to indicate that Smith was incapable of any work. But for the ALJ to place such weight on a checked box in the face of contradictory evidence in the rest of the form was error.

A third reason the ALJ gave for discounting Dr. Mines's opinions was that Smith was discharged from a pain management clinic in 2016. (Tr. 25.) The ALJ does not specifically explain what significance he attaches to Smith's discharge. Ordinarily, if a claimant is discharged from pain management it would suggest that the claimant's condition has sufficiently improved such that intensive pain management is no longer

necessary. That may have been the ALJ's intended implication; in the preceding paragraph the ALJ noted that "the pain management records at the time indicated that medications were effective at improving functioning and decreasing pain." (Tr. 25.)

But such an implication would be incorrect. As the ALJ noted in his recitation of the medical evidence, "[i]n January 2016, the claimant was dismissed for [sic] the pain management clinic for a positive methadone test despite the claimant denying using the substance." (Tr. 23; *see also* Tr. 23 ("The claimant was discharged from a pain management clinic in January 2016 for a positive methadone test and the emergency room records show a history of narcotic pain medications abuse.").)

Evidence that Smith was abusing prescribed narcotics *is* relevant in assessing the severity of his symptoms. *See Jensen v. Colvin*, 149 F. Supp. 3d 1076, 1089 (E.D. Wis. 2016). For example, insofar as the consumption of strong narcotics might ordinarily tend to corroborate complaints of severe pain, *see* SSR 16-7p (noting how increasing medication dosages may indicate that symptoms are intense and persistent), that corroboration is undermined when evidence suggests that the consumption is motivated by abuse rather than the legitimate need for pain control. *See McFadden v. Berryhill*, No. 15-CV-1268, 2017 U.S. Dist. LEXIS 217509, at *17-18 (E.D. Wis. Feb. 22, 2017); *Jensen v. Colvin*, 149 F. Supp. 3d 1076, 1089 (E.D. Wis. 2016) ("[W]hile it is true that frequent use of narcotic pain medication can be evidence of frequent and severe pain, it can also be evidence of a strong desire for the narcotics themselves and even addiction,

and less than honest efforts to obtain such medications certainly bear on the credibility of the claimant.")

However, evidence of narcotics abuse is not inconsistent with a claim of disability, at least not in the same way as evidence that Smith was discharged from pain management because his pain had resolved. But, more importantly, the ALJ did not explain how the evidence that Smith abused narcotics was inconsistent with Dr. Mines's opinions.

The ALJ offered a fourth reason for discounting Dr. Mines's opinion—"Dr. Mines cited to pain as the basis for his opinion, but does not get much more specific." (Tr. 25-26.) A treating source's lack of explanation is an appropriate basis for discounting his opinion. 20 C.F.R. § 404.1527(c)(3). However, in the face of the ALJ's other errors in assessing Dr. Mines's opinions, the court is unable to say that the ALJ would have afforded the same weight to Dr. Mines's opinions simply by virtue of Dr. Mines's failure to identify more than "shoulder / arm pains" and "muscle / joint pains" as the medical findings that support his opinion. Therefore, remand is necessary.

At a minimum, the ALJ's explanation for discounting Dr. Mines's opinions was based on a selective reading of the record. The ALJ focused on the unremarkable aspects of the MRI rather than the fact that it identified an objective basis for Smith's pain. The ALJ discounted Dr. Mines's opinions as internally inconstant because Dr. Mines once checked a box indicating that Smith was able to work, while ignoring the fact that on

8

the same form Dr. Mines stated, consistent with his other opinions, that Smith was "totally disabled." And the ALJ regarded Smith's discharge from a pain management program as inconsistent with Dr. Mines's opinions whereas, at best, it indicated that, in addition to suffering from pain, Smith also abused narcotics. These factual and logical errors diminish the deference to which the ALJ's opinion would otherwise be entitled, *see Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). As such, the court must conclude that substantial evidence does not support the weight the ALJ afforded Dr. Mines's opinions.

**3.2. Severity of Symptoms Under SSR 16-3p**

Pursuant to SSR 16-3p, 82 Fed. Reg. 49,462 (Oct. 25, 2017), the ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work related activities …." SSR 16-3p. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the

individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p.

Smith raises a number of issues with the ALJ's assessment of his symptoms, including that the ALJ improperly focused on the medical evidence that supported his conclusion and ignored contrary evidence; that he improperly considered Smith's possible drug abuse; and that he failed to consider his daily activities.

The court agrees that the ALJ failed to fully comply with SSR 16-3p. For example, the ALJ frequently recounted medical evidence but failed to explain how it supported his conclusion that Smith's self-reported limitations were not as severe as he alleged. (Tr. 22-23.) The ALJ also noted that Smith's pain and physical functioning were "stable" (Tr. 22, 23) and that Smith did "not show any significant decline" (Tr. 23). Such observations are commonly included in ALJs' decisions, but without an explanation as to how it is inconsistent with claims of debilitating pain, it is an empty observation. Pain and other symptoms do not need to be get progressively worse or even vary for them to be disabling. As even noted in SSR 16-3p, symptoms may plateau.

Finally, in conjunction with his discussion of whether Smith met or medically equaled a listed mental impairment, the ALJ concluded that Smith had no restriction in his activities of daily living. (Tr. 20.) The ALJ did not again discuss Smith's activities of daily living in the context of assessing the severity of Smith's symptoms. And given the

ALJ's conclusion that Smith had no such restriction, repetition was probably unnecessary.

The problem is, as even the ALJ acknowledged, Smith *did* have restrictions in his activities of daily living. Smith required a personal care working in 2014 to prepare meals. (Tr. 20.) Smith could drive, but "with assistance." (Tr. 22.) Beyond the details the ALJ acknowledged in his decision, Smith's testimony at the hearing offers evidence of greater restrictions in Smith's activities of daily living. He testified he prepares only small microwavable meals and in the next few weeks will again have a personal care worker to assist him with cleaning and preparing food. (Tr. 50-51.) He said he has panic attacks when he goes outside, and he tries to rely on family to help him with shopping. (Tr. 51.) His attention span is limited, and thus he cannot read or watch television for extended periods. (Tr. 53-54.) He gave up gardening because of his health. (Tr. 54.)

The ALJ closed his discussion of Smith's activities of daily living by saying, "In short, to the extent the claimant has limitations in this area, they are apparently based on his physical impairments, not mental deficits." (Tr. 20.) This might have been fine when discussing activities of daily living vis-à-vis whether Smith met or medically equaled a listed mental impairment, but it was obviously insufficient when it comes to assessing the alleged severity of his physical symptoms. Thus, the ALJ failed to consider Smith's activities of daily living in accordance with SSR 16-3p.

### 3.3. Smith's Need for a Cane

Finally, Smith argues the ALJ erred in his RFC assessment by failing to consider that Smith needs to use a cane. (ECF No. 27 at 23-25.) The ALJ acknowledged evidence of Smith using a cane (Tr. 19, 22, 23) but did not consider whether this additional limitation would further erode his employability.

The Commissioner argues that "Smith did not show medical necessity for a cane. It was simply his subjective complaint that the ALJ did not fully credit in evaluating his symptoms." (ECF No. 34 at 14.) However, the ALJ never said that was the reason he did not include Smith's use of a cane in his RFC determination.

Moreover, contrary to the Commissioner's contention, there is evidence that the use of a cane was medically necessary. For example, Smith testified that Dr. Mines prescribed the use of the cane. (Tr. 58; *see also* Tr. 111, 132 (consultant's summary noting, "Cane was prescribed 6-10 months ago"); Tr. 573 (Dr. Mines treatment note stating "order for cane/grab bar/lift chair" and stating as "History of Present Illness" "needs a grab bar and new cane"); Tr. 684, 794 (physical therapist notes regarding instructions on use of cane.) Therefore, on remand the ALJ also will have to consider the evidence regarding Smith's use of a cane and whether it further limits his employability such that he might be precluded from fulltime work.

4. **Conclusion**

For the reasons set forth above, **IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, this matter is **remanded** for further proceedings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 18th day of December, 2018.

WILLIAM E. DUFFIN
U.S. Magistrate Judge